**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.    **CV 23-5821-JFW(MAAx)**                                    Date:  March 25, 2024

Title:        Carlos Pena *-v-* City of Los Angeles, California

---

**PRESENT:**
          **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

     **Shannon Reilly**                                    **None Present**
     **Courtroom Deputy**                                  **Court Reporter**


**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
          None                                                    None

**PROCEEDINGS (IN CHAMBERS):**          **ORDER DENYING PLAINTIFF'S MOTION FOR**
                                        **PARTIAL SUMMARY JUDGMENT [filed 2/26/24;**
                                        **Docket No. 43]**


     On February 26, 2024, Plaintiff Carlos Pena ("Plaintiff") filed a Motion for Partial Summary Judgment ("Motion").  On March 4, 2024, Defendant City fo Los Angeles ("Defendant") filed its Opposition.  On March 11, 2024, Plaintiff filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's March 25, 2024 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:


**I.      Factual and Procedural Background**[1]

     Plaintiff has owned and operated NoHo Printing & Graphics for over thirty years, and Plaintiff's shop has been located at 5009 Lankershim Boulevard, North Hollywood, California for approximately thirteen years.[2]  On August 3, 2022, Plaintiff was working at his shop when he heard a commotion outside and opened the door to see what was happening.  Plaintiff discovered that a fugitive was

---

     [1]  The facts of this case are largely undisputed.  To the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

     [2]  Plaintiff did not own the building where his shop was located.  Instead, Plaintiff had a month-to-month lease with the property owner.

being pursued by law enforcement officers, who had their weapons drawn.[3]  In an attempt to evade the authorities, the fugitive assaulted Plaintiff, forced his way into Plaintiff's shop, and violently forced Plaintiff out of his shop.  The fugitive then barricaded himself inside.

The law enforcement officers on the scene set up a perimeter.  At approximately 4:20 p.m., the LAPD SWAT team arrived at the scene and the LAPD Crisis Negotiation Team, which works in connection with the SWAT team, attempted to negotiate the fugitive's surrender for approximately one to two hours.  The fugitive did not respond to those efforts.  The LAPD SWAT Team declared an impasse and deployed chemical munitions (a total of twenty-five rounds of gas canisters containing tear gas and pepper spray that were deployed in three different phases throughout the four adjoining businesses)[4] between approximately 7:08 p.m. and 7:54 p.m., in an attempt to apprehend the fugitive.  Specifically, the LAPD SWAT Team's "SWAT After Action Report" states that:

> Tactics were employed with the deployment of multiple phases of chemical munitions, without any response or indication that the suspect was affected.  The concern rose that the suspect could access any business within the structure from the attic space.  We began physically clearing the businesses and deploying chemical munitions into the attic spaces above the business.  We then entered the attic crawl space. Within the attic we cleared to the point where the attic appear undisturbed and unable to progress past the HVAC equipment.  To ensure the remaining parts were clear, we inserted a pole camera into the ceiling of the unsearched areas and could not detect any evidence of the suspect's presence.

Based on the search of the businesses and the shared attic space, the LAPD SWAT team determined that the fugitive had escaped, or was "gone on arrival."[5]  According to Plaintiff, he was told he could re-enter his shop at approximately 2:30 a.m., on August 4, 2022.

According to Plaintiff, the damage to his shop was extensive and is not covered by insurance.  The deployment of the chemical munitions caused damage to the walls, doors, roof, and windows of Plaintiff's shop.  In addition, the tear gas and pepper spray permeated the entire shop, which Plaintiff claims caused additional damage to his shop, his printing equipment, and his inventory, and rendered his shop uninhabitable until Plaintiff had it cleaned by a hazardous materials team.  Despite the damage, Plaintiff concedes that the LAPD SWAT team acted reasonably in attempting to apprehend the fugitive and "that the public good required the destruction of his shop."  Complaint, ¶¶ 5 and 53.  In addition, Plaintiff has stated that "[he does] not fault the City's police officers for acting in the public's interest."  Declaration of Carlos Pena in Support of Plaintiff's Partial Motion for Summary Judgment (Docket No. 51-1), ¶ 24.

---

[3]  The United States Marshals Fugitive Task Force and the Los Angeles Police Department ("LAPD") were attempting to apprehend the fugitive, who was armed and wanted on both federal and state charges.

[4]  Plaintiff's shop was one of four separate but adjoining businesses that shared attic space.

[5]  According to Plaintiff, it was approximately thirteen hours from the time the fugitive barricaded himself in Plaintiff's shop until law enforcement officers determined that the fugitive had escaped.  Complaint, ¶ 27.  Members of the Marshals Fugitive Task Force remained on scene until it was finally determined that the fugitive had escaped.

Initials of Deputy Clerk  _sr_

On October 6, 2022, Plaintiff submitted a claim seeking compensation for his losses to the United States Marshals Service.  On November 15, 2022, the Marshals Service denied Plaintiff's claim.  The Marshals Service concluded that there was "no negligence by any USMS employee" and the "USMS employees were not responsible for the damage done to any property that you allegedly own."  The Marshals Service also stated that Plaintiff "should pursue [his] claim directly with Los Angeles Police Department SWAT."  Plaintiff filed two claims with Defendant – on August 12, 2022 and on January 3, 2023 – seeking compensation for his losses.  In addition, on June 30, 2023, Plaintiff's attorney sent a letter to the Los Angeles City Attorney seeking compensation for Plaintiff.  Defendant has never denied or otherwise responded to Plaintiff's claims.  Because Plaintiff has been unable to afford to repair and replace his shop and his printing equipment, Plaintiff has been operating his business out of his garage using a donated, second-hand printer.  As a result, Plaintiff claims that he has lost and continues to lose considerable income and business value.

On July 19, 2023, Plaintiff filed a Complaint for Compensatory Damages ("Complaint") against Defendant, alleging a claim for the taking of private property without just compensation in violation of the Fifth Amendment pursuant to 42 U.S.C. § 1983.[6]

## I.   Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial.  *Id.* at 250; Fed. R. Civ. P. 56(c), (e).  In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party.  *Anderson*, 477 U.S. at 248.  The Court must assume the truth of direct evidence set forth by the opposing party.  *See Hanon v. Dataproducts Corp.* 976 F.2d 497, 507 (9th Cir. 1992).  However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom.  *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987).  In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"  *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

In ruling on a summary judgment motion, "the judge's function is not himself to weigh the

---

[6]  In the Complaint, Plaintiff mistakenly cites to 28 U.S.C. § 1983 instead of 42 U.S.C. § 1983.

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . .." *Id.* at 255.

## III.     Discussion

In his Motion, Plaintiff argues that he is entitled to summary judgment on the issue of liability on his sole claim for the taking of private property without just compensation in violation of the Fifth Amendment pursuant to 42 U.S.C. § 1983.  Specifically, Plaintiff argues that the Supreme Court has consistently held that when the government intentionally destroys private property for public purposes, it is a taking.  As a result, Plaintiff argues that he is entitled to compensation for the property damage caused by Defendant on August 3, 2022, when members of the LAPD SWAT team attempted to apprehend the fugitive that was barricaded inside of Plaintiff's shop.  In its Opposition, Defendant argues that Plaintiff is not entitled to summary judgment on his claim because the Fifth Amendment does not create a right to recovery for property damage resulting from the exercise of police power.  Specifically, Defendant argues that Plaintiff's claim for the taking of private property without just compensation in violation of the Fifth Amendment fails as a matter of law pursuant to *Baker v. City of McKinney, Texas*, 84 F.4th 378 (5th Cir. 2023), *rehearing en banc denied*, 93 F.4th 251 (5th Cir. 2024), and *Lech v. Jackson*, 791 Fed. App'x 711, 717 (10th Cir. 2019), *cert. denied,* 141 S.Ct. 160 (2020).

### A.     The Takings Clause of the Fifth Amendment

The Takings Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  Historically, the Supreme Court has recognized that, "when the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation."  *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021) *(citing Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002)).  Specifically, the Supreme Court has found that physical takings requiring compensation occur when the government uses the power of eminent domain to formally condemn a property, when it takes physical possession of property without acquiring title to it, or when it "occupies property – say, by recurring flooding as a result of building a dam."  *Id*. (citations omitted).  These types of takings are subject to a "simple, per se rule: The government must pay for what it takes."  *Id.*

### B.     Plaintiff Is Not Entitled to Summary Judgment on the Issue of Liability

The Court concludes that Plaintiff is not entitled to summary judgment on his sole claim for the taking of private property without just compensation in violation of the Takings Clause of the Fifth Amendment.  Specifically, based on the relevant authorities discussed below, the Court concludes that the LAPD SWAT team's actions in attempting to apprehend the fugitive who barricaded himself inside Plaintiff's shop, which resulted in extensive damage to Plaintiff's shop, constituted a valid use of police power and did not constitute a taking for purposes of the Fifth Amendment.  *See, e.g., Slaybaugh v. Rutherford County, Tennessee*, __ F.3d __, 2023 WL 5498052 (M.D. Tenn. Aug. 24, 2023) (concluding that damage to the home was not a taking that triggered the right to compensation under the Fifth Amendment where police officers caused substantial damage to the plaintiffs' home while apprehending and arresting the plaintiffs' adult son for homicide).  Because

no taking occurred, "as unfair as it seems," Defendant has no responsibility to compensate Plaintiff. *Id.*  As the Tenth Circuit observed in *Ostipow v. Federspiel*:

> Governments seize property for different reasons, utilizing different theories of power. When a government commits a taking for public use, it does so under its civil, eminent domain powers. [However], [g]overnments also seize property utilizing their police powers, which are criminal in nature.  Indeed, it is well settled that a state's seizing and retaining property as part of a criminal investigation is not a "taking" for a "public purpose" under the Fifth Amendment, and thus does not give rise to a claim for just compensation.

*Ostipow v. Federspiel*, 824 Fed. Appx. 336 (6th Cir. 2020) (*citing Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996) and *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1155 (Fed. Cir. 2008)).  In *Ostipow*, police officers found marijuana growing in a house owned by the plaintiffs but occupied by their son.  The police officers seized items purportedly connected to drug manufacturing and pursued civil forfeiture against those items as well as the house.  The plaintiffs spent the next eight years asserting their right to the seized property, ultimately obtaining a favorable judgment.  When the judgment was not satisfied immediately, they filed suit in federal court, asserting a myriad of claims, including a takings claim under the Fifth Amendment.  *Id.* at 338-39.  The Sixth Circuit affirmed the trial court's dismissal of the takings claim.  Although the Sixth Circuit observed that the claim "ha[d] the feel of a taking" because "the government came to their home, took their property, sold it, and have yet to compensate [them]," the Sixth Circuit concluded that on "closer inspection," the plaintiffs' takings claim did not "quite match up with traditional Takings Clause jurisprudence." *Id*. at 341.  Instead, because the plaintiffs' property was "seized pursuant to uncontested warrants authorizing the search and seizure of property believed to be involved in drug manufacturing," the Sixth Circuit concluded that the plaintiffs' property had been seized pursuant to a lawful use of police power, and not eminent domain.  *Id.*

In addition, the recent decisions in *Baker v. City of McKinney, Texas*, 84 F.4th 378 (5th Cir. 2023), *rehearing en banc denied*, 93 F.4th 251 (2024), and *Lech v. Jackson*, 791 Fed. App'x 711, 717 (10th Cir. 2019), *cert. denied,* 141 S.Ct. 160 (2020), which are factually similar to the instant case, support the conclusion that the damage to Plaintiff's shop does not constitute a taking under the Fifth Amendment.  In *Baker,* the homeowner's daughter called the police department to report that an armed fugitive had entered the homeowner's house with a teenage girl and requested to hide his car in the garage.  *See Baker v. City of McKinney, Texas*, 571 F. Supp. 3d 625, 629 (E.D.Tex. 2021).  The fugitive eventually released the girl, who told police that the fugitive had seven firearms and refused to leave the house alive.  *Id.*  After further negotiations proved unsuccessful, the police tried to induce the fugitive to leave the home by deploying tear gas.  *Id.*  When the deployment of tear gas proved unsuccessful, the police forcefully entered the home with a "tank-like vehicle know as a Bear Cat," and in the process the police ran over the backyard fence and broke down both the front door and the garage door, causing over $50,000 in damage.  *Id*. at 629 and 637.  Once inside, the police discovered that the fugitive had already taken his own life.  *Id*.  The homeowner filed suit against the City of McKinney based on the Fifth Amendment Takings Clause, alleging that the police had caused extensive damage to her home.  The homeowner did not dispute that the police department's actions were a valid exercise of the state's police power, but argued that "exercises of the police power are susceptible to a takings analysis."  *Id.*  The district court denied

Initials of Deputy Clerk  _sr_

the City of McKinney's motion to dismiss, and concluded that the homeowner had "plausibly alleged [that] the City's destruction of her home resulting from the exercise of its police power could amount to a taking" and that the City's refusal to compensate her for that damage "plausibly amounts to a Fifth Amendment violation." *Id*. at 637.  The district court subsequently granted the homeowner's motion for partial summary judgment, concluding that the City of McKinney was liable under the Fifth Amendment for taking the homeowner's property without just compensation when it refused to pay for the damage to her house.  *Baker v. City of McKinney, Texas*, 601 F.Supp. 3d 124 (E.D. Tex. 2022).  The Fifth Circuit reversed the district court's rulings and concluded that "as a matter of history and precedent, the Takings Clause does not require compensation for damaged or destroyed property when it was objectively necessary for officers to damage or destroy that property in an active emergency, to prevent imminent harm to persons," which included "the hostage child," "the officers who responded on the scene," and "others in her residential community."  *Baker*, 84 F.4th at 379.

Similarly, in *Lech*, the plaintiffs' home was effectively destroyed during police officers' arrest of an armed and dangerous criminal suspect who had broken into the home in order to evade capture.  *Lech*, 791 Fed. App'x at 713.  In the course of the nineteen-hour standoff between police and the suspect, including hours of negotiations, the police officers used "increasingly aggressive tactics" that ultimately rendered the home uninhabitable.  *Id.*  The City of Greenwood Village offered to help the plaintiffs with "temporary living expenses" while they demolished and rebuilt their home, but otherwise denied liability and declined to provide additional compensation.  *Id.*  The plaintiffs filed an action against the City of Greenwood Village alleging a violation of their rights under the Fifth Amendment because the plaintiffs' home was destroyed without just compensation.  The district court granted summary judgment in favor of the defendants, distinguishing between the state's power under eminent domain to take private property for public use and its "police power, which allows [it] to regulate private property for the protection of public health, safety, and welfare," concluding that the exercise of police power never triggers the requirement of just compensation under the Fifth Amendment.  *Id.* at 714.  The district court found that the apprehension of a criminal suspect fell within the scope of the state's police powers and, as a result, no taking occurred.  *Id*.  The Tenth Circuit affirmed the district court's ruling, and observed that although the Supreme Court has never directly addressed the issue, the Supreme Court has previously implicitly recognized a distinction between a state's power under eminent domain and its police power.  *Id.*; *see also Bennis v. Michigan*, 516 U.S. 442 (1996) (rejecting the plaintiff's Takings Clause claim arising from the state's forfeiture of a vehicle where a crime had been committed, without requiring the state to compensate the plaintiff, who shared ownership of the car and was not implicated in criminal activity, because when the state acquires property "under the exercise of governmental authority other than the power of eminent domain," the government is not "required to compensate the owner for [that] property").  Although acknowledging the unfairness of requiring the plaintiffs to bear the cost when they bore no fault in the criminal suspect's decision to take refuge in their home, the Tenth Circuit held that "when the state acts pursuant to its police power, . . . its actions do not constitute a taking for purposes of the Takings Clause."  *Id*.  The Tenth Circuit also held that although the "contours of the police power are difficult to discern," the essential question was whether the state "control[led] the use of property by the owner for the public good," as opposed to taking the property "for public use."  *Id*. at 718.  The Tenth Circuit found that the plaintiffs' home "had become instrumental to criminal activity – it was serving as a hideout for a fugitive."  *Id*. (citation and internal quotation marks omitted).  As a result, the Tenth Circuit concluded that "the

Initials of Deputy Clerk  _sr_

damage caused in the course of arresting a fugitive on plaintiffs' property was not a taking for public use, but rather it was an exercise of the police power," and "so long as the government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment.  The innocence of the property owner does not factor into the determination."  *Id.* at 718-19.

Moreover, beyond *Baker* and *Lech*, the Court concludes that the weight of authority indicates that claims based on damages caused by the government's exercise of police power in the course of enforcing criminal laws does not provide a basis for a taking claim under the Fifth Amendment.  *See, e.g., Johnson v. Manitowoc County*, 635 F.3d 331, 333–34, 336 (7th Cir. 2011) (describing a takings claim as a "non-starter" when damage to a landlord's home occurred as a result of actions taken under the state's police power); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331–32 (Fed. Cir. 2006) (collecting cases and dismissing a takings claim where the government seized property, failed to initiate forfeiture proceedings for four years, ultimately agreed to dismiss the forfeiture action, but did not return the property until its only value was as scrap); *see also AmeriSource Corp. v. United States*, 525 F.3d 1149, 1150, 1153–54 (Fed. Cir. 2008) (holding that no taking occurred where the government physically seized (and ultimately "rendered worthless") the plaintiff's pharmaceuticals "in connection with [a criminal] investigation" because "the government seized the pharmaceuticals in order to enforce criminal laws"—an action the court found to fall well "within the bounds of the police power") (*citing Bennis v. Michigan*, 516 U.S. 442, 443–44 and 452–53 (1996)); *Bachmann v. United States*, 134 Fed. Cl. 694, 696 (Fed. Cl. 2017) (holding that, "[w]hen private property is damaged incident to the exercise of the police power, such damage" – even when physical in nature – "is not a taking for the public use, because the property has not been altered or turned over for public benefit") (*citing Nat'l Bd. of Young Men's Christian Ass'ns v. United States,* 395 U.S. 85, 92–93 (1969)).  Instead, some courts have found that plaintiffs may have viable claims under the Fourth Amendment if the exercise of police power is unreasonable or out of proportion to the suspected crimes.[7]  *See, e.g., Denby v. City of Casa Grande*, 668 F.Supp. 3d 855 (D. Ariz. 2023) (noting that "Ninth Circuit and Supreme Court authority has made clear that 'unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively,' may sometimes amount to a Fourth Amendment violation" and concluding that the defendants' search of the plaintiff's residence "was carried out in a manner which violated Plaintiff's clearly established Fourth Amendment right against unnecessary and excessive destruction of property") (*citing Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997), and *Dalia v. United States*, 441 U.S. 238 (1979)); *see also Lawmaster v. Ward*, 125 F.3d 1341 (10th Cir. 1997) (finding that the plaintiffs' allegations that police officers left a pistol submerged in the dog's water bowl and spread cigar and cigarette ashes throughout his home and bedding in the course of executing a search of the plaintiff's home were sufficient to state a claim under the Fourth Amendment, but also finding that the plaintiff did not allege a taking in violation of the Fifth Amendment, even assuming the officers' conduct was unreasonable); *Johnson v. Manitowoc Cty.*, 635 F.3d 331 (7th Cir. 2011) (rejecting the plaintiff's Fifth Amendment claim based on police officers' destruction of his home in executing a search warrant associated with a murder

---

[7]  Plaintiff concedes that the LAPD SWAT team acted reasonably in attempting to apprehend the fugitive and "that the public good required the destruction of his shop."  As a result, it is clear that Plaintiff did not – and cannot – allege a claim for violation of his Fourth Amendment rights.

investigation where the plaintiff's tenant was a suspect on the basis that the "Takings Clause does not apply when property is retained or damaged as the result of the government's exercise of its authority pursuant to some power other than the power of eminent domain" but considering the plaintiffs' Fourth Amendment claim on the merits).

Accordingly, because the damage to Plaintiff's shop was caused by the LAPD SWAT team's use of police power that Plaintiff concedes was reasonable, it did not constitute a taking for purposes of the Fifth Amendment.  As a result, the Court must necessarily conclude that Plaintiff is not entitled to summary judgment on the issue of liability on his sole claim for the taking of private property without just compensation in violation of the Takings Clause of the Fifth Amendment.

## IV.    Conclusion

For all the foregoing reasons, Plaintiff's Motion is **DENIED**.

IT IS SO ORDERED.

Initials of Deputy Clerk  _sr_